## JERNIGAN *v.* GARRETT.

1. Issues made by objections filed to a petition for the adoption of a child are for determination by the court, and the statute makes no provision for the trial of such issues by a jury.

2. A judgment of a court of competent jurisdiction in another State, awarding the custody of a child to a named person, which judgment is regular on its face and unimpeached for fraud, is conclusive of the status at the time of its rendition, and will be accorded full faith and credit when introduced in proceedings in this State for the custody of the child.

3. But changed conditions may be shown; and where such changed conditions are shown, and that the person to whom the child was awarded by the decree of the foreign court has become an unfit and unsuitable person for the custody of the child, its custody may be given to another person.

4. This court does not undertake to pass upon the issues as to whether or not the custody of the child involved in this case was properly awarded to the defendant in error. Such issues depend upon the evidence in the case, and can not be decided here upon appeal, as none of the evidence introduced upon the hearing is brought up in the record.

No. 3372. APRIL 10, 1923.

Custody of child. Before Judge Meldrim. Chatham superior court. July 14, 1922.

*Ulmer & Bright,* for plaintiff in error.

*Connerat & Hunter,* contra.

BECK, P. J. M. F. Garrett brought a petition to the superior court of Chatham County, under section 3016 of the Civil Code, for the adoption of a child by the name of Harold Butler. The petition alleged that the father was dead or had abandoned his family, and that the mother abandoned the child, which had been in the custody and control of petitioner for five or six years prior to the bringing of the petition for adoption, and that petitioner and his wife had become deeply attached to the child, which affection was reciprocated; that the child had been left with petitioner by its mother in Savannah several years before; that the mother had left the city, and petitioner had been unable to locate her, although he made every effort to do so; that petitioner, after he had made repeated efforts to get in communication with the mother and failed to locate her, had applied to the juvenile court of Chatham County for direction and advice, and that the court had taken jurisdiction of the case; that the judge of the juvenile court, after a hearing at which the mother was present and rep-

resented by attorneys, passed an order remanding the child to the custody of petitioner for a probationary period of one year, and by a later order consented for petitioner to adopt the child upon application to a court of competent jurisdiction; that the mother of the child had been guilty of immoral conduct and was not a suitable or fit person to keep the child; that her present husband, with whom she was living, was afflicted with pulmonary tuberculosis in an advanced stage, which constituted a menace to the child's health, and neither the mother nor the stepfather was financially able to keep the child; and that altogether it was manifestly to the interest of the child to be adopted by petitioner. The orders of the juvenile court, placing the child in the custody of the petitioner and reciting the abandonment by the mother and her immoral conduct, and the consent of the juvenile court to the adoption proceedings, are attached to the petition and made a part of the same.

Mrs. E. P. Jernigan, the mother of the child, filed a special plea stating that " This court is powerless to interfere," for the reason that on February 1, 1915, the superior court of Hillsborough County, New Hampshire, rendered a decree giving the custody of the child to his mother, then Mrs. Butler, now Mrs. Jernigan. The defendant also entered a demand for a jury trial on the question of abandonment and other questions of fact involving the defendant's unfitness to have the child.

Evidence was adduced upon the trial of the case, on the question of abandoment, the mother's unfitness to care for the child, and all other matters of fact. A number of witnesses testified, and a great deal of documentary evidence was submitted. None of this evidence is before the Supreme Court. The judge of the superior court, without the intervention of a jury, heard the case and decided that the abandonment by the mother had not been sufficiently proved to declare an adoption, but ordered that the child remain in the custody of the petitioner, where it had been for a number of years, providing that the mother of the child be allowed to visit the child at such times and places as were proper, and specifically giving her the opportunity of seeing the child, three afternoons each week. Mrs. Jernigan excepted.

1. Section 3016 of the Civil Code relates to the mode of adopting a child. It provides that any person desirous of adopting a child,

under the circumstances specified in the code, may present a petition to the superior court of the county in which said child may be domiciled, setting forth the name of the father, or, if he be dead or has abandoned his family, the mother, and the consent of such father or mother to the act of adoption. It further declares that if the father or mother has abandoned the child and the court is further satisfied that such adoption would be to the interest of the child, the court shall declare the child to be the adopted child of the petitioner and capable of inheriting his estate. The same statute fixes the relationship between the person adopting and the adopted child after the fact of adoption. The statute referred to contemplates that the court, after hearing objections, if any such are filed to the application, shall determine the questions made. Trial by jury is not contemplated by this statute. The only hearing provided for is by the court to whom the application is made, and the constitutionality of the law is not attacked on the ground that it is in violation of the constitutional guaranty of the right to a trial by a jury. And if such an attack had been made on the statute, it would have been without merit. The provision in the constitution relating to a jury trial preserves the right of trial by jury as it was at common law at the time fixed by the adopting act of 1784. And the law in regard to the adoption of children, as it is provided for in our law now, was not known to the common law, and is purely a statutory procedure. 1 C. J. 1371; *Rahn* v. *Hamilton,* 144 *Ga.* 644 (87 S. E. 1061); *Lansdell* v. *Lansdell,* 144 *Ga.* 572 (87 S. E. 782).

2, 3. The decree of the New Hampshire Court awarding the custody of the child to Mrs. Jernigan did not preclude action by the superior court of Chatham County upon the question of awarding the child to the applicant. Under the full-faith-and-credit provision of the constitution of the United States, the decree did place the custody and control of the child in Mrs. Jernigan at the time at which the decree was rendered; but more than five years from the date of that decree had elapsed, and evidence showing changed conditions, and that Mrs. Jernigan had become an improper person to have charge and custody of the child, would authorize the award of the custody of the child to another person. The applicant in this case alleges facts showing that Mrs. Jernigan, the mother of the child, should not have custody of it,

and other allegations show that the applicant was a fit and suitable person to have custody of the child in question; and custody of the child is prayed, in the event a decree of adoption should not be granted. The court did not err in rendering judgment overruling the plea setting up the decree of the New Hampshire court.

4. The ruling made in headnote 4 requires no elaboration.

*Judgment affirmed. All the Justices concur.*